**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDRE HINES, | ) | CASE NO. 1:20-CV-01422-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant, | ) | |

**I. Introduction**

Plaintiff, Andre Hines ("Hines" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On October 19, 2017, Claimant filed an application for DIB, alleging a disability onset date of December 2, 2016. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 223). On April 3, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 146-176). On May 21, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 91-

110). The ALJ's decision became final on May 3, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 65).

On June 29, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15, 16, 18). Claimant asserts the following assignments of error:

(1) The ALJ failed to properly evaluate the evidence and give controlling weight to the opinions of the treating physicians in violation of the treating physician rule along with failing to properly consider Social Security Ruling 02-1p.

(2) The ALJ committed harmful error when he failed to properly consider Hines' pain.

(3) The ALJ committed harmful error when he failed to satisfy his burden at Step Five of the Sequential Evaluation.

(ECF No. 15 at 1).

### III. Background

#### A. Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant is a 49-year-old male with at least a high school education. He alleges disability due to nerve damage, a right shoulder injury, high blood pressure, sleep apnea, and a knee problem (2E/2). Despite repeated shoulder surgeries in his right arm, he still is in pain; he has difficulty washing his hair and picking up a water bottle. He testified to using nerve medication and a topical gel for shoulder pain. The claimant is left-handed. He testified to taking 5 different heart medications. He testified to daily knee pain and having bilateral arthritis.

(ECF No. 12, PageID #: 100).

#### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> As it relates to the claimant's tendinitis with impingement, status post rotator cuff repair, [t]he claimant underwent physical therapy between 2017 to 2019 (2F; 10F-14F; 18F-19F; 21F). MRI results

2

showed a myotendinous tear of the infraspinatus and subaacromial/subdeltoid bursitis [sic] (2F/2, 8). The claimant's right shoulder showed a diminished flexion, abduction, and internal and external rotation (2F/5). His left and right shoulders also exhibited a decreased range of motion and pain, but no tenderness or deformity (3F/7; l7F/4). Mild osteoarthritis was noted at the claimant's acromioclavicular joint (2F/8; 20F/l l). The claimant's shoulder post surgery was consistent with pain control (3F/12). Due to a failed internal fixation of the right shoulder rotator cuff repair and tendinitis, the claimant underwent a foreign body removal and an arthroscopy of the glenohumeral joint in October 2017 (3F/18, 33). The claimant had tenderness on palpation of the subacromial area as well as the long head of the biceps, but there was no evidence of instability (l7F/l4). Musculoskeletal examination did not show myalgia, dysarthria, edema, or weakness (25F).

As it relates to the claimant's asthma [with] sleep apnea, he was diagnosed with mild intermittent asthma without complication and obstructive sleep apnea (3F/6; 18F/8). Respiratory examination showed no shortness of breath during exertion and no wheezing that is consistent with asthma (25F/15).

As it relates to the claimant's spinal strain, Spondylosis of the cervical region without myelopathy or radiculopathy was noted (18F/8). Examination revealed spasms in the lumbar spine with tightness and a limited range of motion (20F/16). However, the claimant's gait was normal (3F/l l). His reflexes were normal and symmetric (3F/l l). Musculoskeletal examination showed a normal range of motion (3F/30). The claimant's neck was supple and had a normal range of motion (3F/46). The claimant had a normal gait, moved his extremities freely, and had no joint swelling (5F/6; 25F/8). The claimant had a negative straight leg raising test (20F/16).

As it relates to the claimant's degenerative changes of the knees, April 2018 bilateral knees imaging revealed minimal degenerative changes at the patella (l 7F/41; 20F/27). Tenderness on palpation of the knee joint was noted (28F/5). The claimant reported that his knee pain was better after the intra articular steroid injection (20F/13, 27). Lidocaine was injected into each knee (20F/27-28; 28F/5). His knees were described as more limber, showing improvement (20F/21).

As it relates to the claimant's depressive disorder and anxiety disorder with PTSD, Psychiatric/behavioral review was negative for agitation, behavioral problem, and confusion (3F/7). The claimant

3

> has a normal mood and affect (3F/7). His behavior was normal (3F/7). His judgment and thought content were normal (3F/46). The claimant was prescribed Zoloft for his mood and anxiety (6F/9). He was assessed to have recurrent PTSD; however, he was not an acute risk of harm to himself or others (6F/9). The claimant's depression worsened in context of additional grief since the death of his brother and cousin (6F/33; I5F/8; 23F/2). Mental status examination described the claimant as neat, clean, and appropriately dressed (23F/4). The claimant's cognition was intact despite a history of head injury/trauma (23F/4). The claimant presented as a good historian (6F/8). He was described as cooperative, engaged, with regular speech, good eye contact, and without abnormal movement (23F/4). His insight was moderate (23F/4). He was prescribed Sertraline for his major depressive disorder (23F/5). The claimant underwent individual psychotherapy sessions between 2017 to 2018 (24F). Psychological examination showed no depression and anxiety (25F/l l).
>
> As it relates to the claimant's obesity and hypertension, the claimant's December 2016 BMI measured 36.20; a BMI over 30 is considered to be obese (3F/11). The claimant's November 2017 body mass index (BMI) measured 39.27 (3F/12; 4F/9). The claimant was counseled to improve his diet and exercise patterns in order to aid in medical management (3F/12). Most recently, the claimant's January 2019 BMI measured 39.94 (22F/5). His blood pressure measured 148/88 in September 2017 (3F/46). His December 2017 blood pressure measured 124/84 (5F/6). November 2017 stress test and left and right heart ventricle examinations revealed normal results (4F/10). His June 2018 blood pressure measured 128/71 (26F/l). The claimant's January 2019 blood pressure measured 143/78 (22F/4). The claimant's hypertension was described as on the low normal side (26F/2). Chest x-ray imaging from 2019 revealed no active disease in the chest (21F/10; 22F/8). His hypertension was controlled, as recently as 2019 (5F/7; 25F/9; 21F/11).

(ECF No. 12, PageID #: 100-01).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: tendinitis with impingement syndrome of the right shoulder, status post rotator cuff repair; asthma with sleep apnea; spinal strain; minimal degenerative changes of the knees; depressive disorder;

4

anxiety disorder with Post-traumatic stress disorder (PTSD); obesity; and hypertension (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545) to perform light work as defined in 20 CFR 404.1567(b), except for no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching with right shoulder, but no limitation of lateral reaching or any limitation of left shoulder; no concentrated exposure to temperature extremes, humidity or environmental pollutants; no exposure to hazards (heights, machinery, commercial driving); and mental limitation that he perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions (no arbitration, negotiation, or confrontation) (20 CFR 404.1569a).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three assignments of error: Issue One challenges to the weight given to the medical opinion of the treating physicians as well as a challenge to the ALJ's consideration of SSR 02-1p, *Policy Interpretation Ruling — Titles II and XVI: Evaluation of Obesity*; Issue Two challenges the ALJ's consideration of Claimant's pain as a disabling impairment; and Issue Three challenges the ALJ's finding at step five, arguing that the ALJ failed to consider Claimant's foot injury and ongoing treatment for his foot and shoulder pain. Upon review, Claimant's first assignment of error also includes challenges to the ALJ's determination that Claimant did not meet any Listing and the ALJ's failure to list coronary artery disease as a severe impairment. Additionally, Claimant argues that the ALJ: failed to consider the effect of the combination of Claimant's impairments; failed to include his crushed foot injury and knee degeneration as severe impairments; and failed to include these impairments in the RFC analysis.

Upon careful review of the record, this Court agrees with Claimant that the ALJ failed to include his crushed foot injury and the pain and treatment associated with that injury in his RFC analysis. Accordingly, as explained below, remand is required.

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id*. "The goal of the test is to 'screen out totally groundless claims.'" *Id*. (*Farris v. Sec'y of Health & Human Servs*., 773 F.2d 85, 89 (6th Cir. 1985)).

The ALJ found that Claimant suffered numerous severe impairments: "tendinitis with impingement syndrome of the right shoulder, status post rotator cuff repair; asthma with sleep apnea; spinal strain; minimal degenerative changes of the knees; depressive disorder; anxiety

7

disorder with Post-traumatic stress disorder (PTSD); obesity; and hypertension (20 CFR 404.1520(c))." (ECF No. 12, PageID #: 97). Therefore, Claimant "cleared step two of the analysis." *Anthony,* 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id*. (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). The ALJ, therefore, did not commit reversible err. *Id*.

But, "[w]hen formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin*., No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (citing *LaRiccia v. Comm'r of Soc. Sec*., 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe.")). The ALJ must do so because

> [w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "'an ALJ's conclusion that an impairment is non-severe is

8

not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions.'" *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

The ALJ in this case failed to do as the law requires. Indeed, the ALJ's decision never mentions Claimant's crushed foot nor the pain or treatment associated with that injury. As Claimant argues, the medical records support finding that Claimant's crushed foot and pain associated with the injury is a medically determinable impairment. (*See* ECF No. 12, PageID #: 362, 395, 525, 970-974, 989-998, 1001-1004, 1119-1155, 1309-1313). On December 2, 2016,[1] Claimant was injured at work when a load fell on his right foot crushing his steel toe boot and crushing his foot. (ECF No 12, PageID #: 1001). Dr. Sami Moufawad treated Claimant for his crushed foot injury throughout 2017, 2018, and 2019. (*See e.g.* ECF No. 12, PageID #: 993-995, 1119-1122, 1124, 1309-1313). An MRI of the right foot showed subcutaneous soft tissue edema consistent with contusion or inflammation. (ECF No 12, PageID #: 1003). Dr. Moufawad assessed Claimant with contusion of right foot, crushing injury of right foot, sprain of right ankle, and major depressive disorder moderate with anxious distress. (ECF No. 12, PageID #: 972). Electrodiagnostic findings were consistent with moderate focal neuropathy of the right sural and superficial peroneal sensory nerve. (ECF No. 12, PageID #: 972, 999-1000). Additionally, treatment records related to Claimant's right foot injury indicate "slow gate avoiding to put full weight on the right foot, taking off the shoes and socks very carefull[y] to avoid aggravation of the pain." (ECF No. 12, PageID #: 1003; *see also* 970, 991, 995). The records note that Claimant walked with a limp and used a cane. (ECF No. 12, PageID #: 1003). Finally, the records indicate Claimant treated his right foot injury and with continuing prescriptions for Gabapentin. (*See e.g.* ECF No. 12, PageID #: 972, 977, 981-982, 990-991, 996, 1311). Claimant also discussed his foot

---

[1] Notably, this is the alleged onset date of Claimant's DIB claim.

9

pain and stated that it would prevent him from performing even in a job where he can sit or stand at will. (ECF No. 12, PageID #: 166-67). The Commissioner fails to cite to any part of the ALJ's decision that discusses Claimant's right foot injury. Instead the Commissioner generally states that "the record reflects the ALJ's express consideration of Plaintiff's pain complaints and accommodated those limitations that were supported by the objective medical evidence and other evidence of record, including treatment and its efficacy (Tr. 36-38)." (ECF No. 16 at 1). Yet, while the ALJ's decision discussed many of Claimant's complaints and impairments, it does not mention his right foot impairment.

An ALJ's failure to provide such an explanation requires remand because it prevents a meaningful review to determine whether substantial evidence supports his decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.' " (quoting 5 U.S.C. § 557(c)(3)(A) ) ); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); *Cote v. Colvin,* No. 16-CV-57-SLC, 2017 WL 448617, *7 (W.D. Wis. Feb. 2, 2017) (requiring the ALJ to "build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment").

Here, the ALJ's only arguable reference to Claimant's foot injury is reference to two medical records stating that Claimant had "normal gait". However, a review of the records cited by the ALJ with respect to Claimant's gait appears to be a December 2017 follow up appointment with the primary purpose of checking Claimant's cholesterol level (ECF No. 12, PageID #: 1237) and an October 2017 consult for treatment of chest pains (ECF No. 12, PageID # 507). The ALJ referred to these records while discussing Claimant's spinal strain and did not relate them to lower extremity impairments. (ECF No. 12, PageID # 100-101). Given the amount of medical evidence demonstrating ongoing pain and treatment for Claimant's right foot injury, the Court is unable to build a logical bridge between that evidence and the ALJ's explanation. Accordingly, the Court finds that the ALJ did not properly consider each of Claimant's impairments when crafting the RFC.

Remand is required. *See, e.g., Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190–91 (6th Cir. 2009) ("[O]nce it was determined that Simpson suffered from severe physical impairments, . . . the ALJ was required to consider the impairments resulting from this condition and her adjustment disorder with anxiety and depression in assessing her RFC. Instead, the ALJ held that 'based on my evaluation of the claimant's mental impairment as not a severe impairment . . . she does not have any limitations stemming from that mental impairment.' The ALJ's finding is contrary to controlling law."); *James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493, at *10 (N.D. Ohio Feb. 20, 2020) ("[A]n ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment constitutes reversible error where the ALJ makes no mention of these non-severe mental impairments in the RFC analysis."); *Workman v. Berryhill*, No. CV 7:16-261-DCR, 2017 WL 3880661, at *3 (E.D. Ky. Sept. 5, 2017) ("Although the non-severe determination of the claimant's mental impairment was not in error, the ALJ was

11

still required to consider the limiting effects of all impairments, including limitations resulting from non-severe impairments, when determining [the] RFC."); *Kochenour*, 2015 WL 9258609, at *6 (remanding because "after the ALJ considered all of the evidence of record concerning Plaintiff's depression at step two, she went on to discuss only Plaintiff's physical impairments in her RFC analysis"); *Patterson*, 2015 WL 5560121, at *5 ("Yet [the ALJ's] RFC analysis focuses exclusively on Plaintiff's physical impairments, without any discussion of whether her non-severe mental impairments contribute, in any way, to an inability to perform substantial gainful work. Under these circumstances, the Court cannot conclude that the ALJ properly considered all of her impairments in accordance with SSR 96–8p and remand is necessary."); *Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 811 (S.D. Ohio 2015) (internal citation omitted) ("In other words, the ALJ found no limitations arising from Plaintiff's mental impairments simply because those impairments were not severe. Such conclusion is error because it conflates the distinct steps of the sequential review process and fails to reasonably explain the absence of limitations arising from Plaintiff's mental impairments. This error is not harmless.").

The Court recognizes that Claimant's foot impairment, even when considered in combination with his other severe and non-severe impairments, may not require additional workplace restrictions. But the ALJ's "detailed analysis at step two does not relieve [him] of [his] duty to provide an explanation as to the holistic impact of all impairments, both severe and non-severe, specifically in relation to Plaintiff's RFC." *Kochenour*, 2015 WL 9258609, at *6 (ordering remand despite "recogniz[ing] the depression was so minimally limiting that no mental restrictions should factor into the RFC"). Moreover, if restrictions from his foot impairment (singularly or in combination with his other impairments) limits Claimant to sedentary work (*see* ECF No. 12, PageID 174-75) according to Claimant, he would be disabled pursuant to Appendix 2 to Subpart

12

P of Part 404, the Medical Vocational Guidelines, Grid Rule 201.12 (*see* ECF No. 15 at 22). Thus, it is necessary for the ALJ to demonstrate that he considered Claimant's right foot impairment, whether severe or non-severe, when crafting the RFC.

Upon remand, the ALJ should explicitly discuss Claimant's right foot injury and treatment for the pain associated with the injury when crafting Claimant's RFC. The ALJ must then determine whether Claimant can meet the demands of a significant number of jobs in the national economy, despite his limitations.

Because the Court finds a remand is necessary at step two, the Court expresses no opinion on the remaining issues.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: June 21, 2021

                                                                  s/ *Carmen E. Henderson*
                                                                  CARMEN E. HENDERSON
                                                                  U.S. MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).